IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| STEPHANIE AGEE,<br>1211 S. Eaton Street<br>Baltimore, MD 21224<br>(Baltimore City),<br><br>      Plaintiff,<br><br>v.<br><br>EXCELSIOR COMMUNITIES, LLC,<br>986 Monroe Avenue<br>Rochester, NY 14620<br>    Serve on:<br>    Aaron Chasen, Manager<br>    986 Monroe Avenue<br>    Rochester, NY 14620,<br><br>and<br><br>BREWERS HILL REALTY, LLC,<br>986 Monroe Avenue<br>Rochester, NY 14620<br>    Serve on:<br>    The Corporation Trust Incorporated<br>    2405 York Road, Suite 201<br>    Lutherville-Timonium, MD 21093,<br><br>      Defendants. | Civil Action No.: _____<br><br>**JURY TRIAL DEMANDED** |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

**CLASS ACTION COMPLAINT**

Plaintiff Stephanie Agee, on behalf of herself and all others similarly situated, sues Excelsior Communities, LLC and Brewers Hill Realty, LLC for damages and declaratory and injunctive relief, and states as follows:

**INTRODUCTION**

1. This is an action to protect tenants from their landlord's unlawful debt collection efforts and deceptive trade practices under Maryland law in the rental of consumer realty.

1

2. The Axel Brewers Hill building, located at 1211 S. Eaton Street, is billed by Defendants as a "high-end property located in the desirable Brewers Hill neighborhood of Baltimore City County. The property features pristine contemporary design throughout, with luxury amenities such as a resort-style pool," and comprises 372 units.

3. The building, like all rental properties in Baltimore City, is required to be licensed under Baltimore City Code, Art. 13 § 5-4 ("§ 5-4").

4. The building has been unlicensed since November 1, 2023 and is unlicensed as of this filing.

5. A landlord and its agents may not seek to collect rent for any period in which the property was unlicensed, even if the landlord subsequently obtains a license.

6. Defendants here, the property owner and management company of the building, took systematic debt collection efforts, and rent was paid in response to those efforts.

7. Defendants engaged in other unfair, abusive, and deceptive trade practices that damaged Plaintiff and their other tenants.

8. Defendants are liable to Plaintiff and the class under the Maryland Consumer Debt Collection Act and the Maryland Consumer Protection Act.

**PARTIES**

9. Plaintiff Stephanie Agee is a resident of Baltimore City, Maryland. Since 2021, Plaintiff has been a lessee of 2411 S. Eaton Street. Plaintiff is a consumer as defined under Maryland law.

10. Defendant Excelsior Communities, LLC is a limited liability company of an unknown state with a principal office at 986 Monroe Avenue, Rochester, NY 14620. At least one of the LLC's members is a natural person who is a citizen of New York. Excelsior Communities,

LLC is not registered to do business in Maryland. Excelsior Communities is the property manager of the property and acts as the agent of Brewers Hill Realty.

11. Defendant Brewers Hill Realty, LLC is a Delaware limited liability company with a principal office at 986 Monroe Avenue, Rochester, New York 14620. Brewers Hill Realty acquired the property in 2022.

## JURISDICTION AND VENUE

12. The Court has original jurisdiction over this claim under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2)(A), (d)(8) because this is a class action in which the amount in controversy exceeds $5 million, exclusive of interest and costs, and one or more members of the class are citizens of a different state than Defendants.

13. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events, acts, and omissions giving rise to Plaintiff's claims occurred in this District and Defendants systematically and continually transact business in this District.

## FACTS

14. The apartment building at 1211 S. Eaton Street ("building" or "property") was constructed in 2020. It was named the Alta Brewers Hill.

15. In January 2022, Defendant Brewers Hill Realty purchased the building.

16. Defendants renamed the building Aura Brewers Hill. Following the filing and settlement of a trademark infringement lawsuit in this Court, *Trinsic Res. Grp. v. Excelsior Communities, LLC, et al.*, No. 22-3056-ELH, Defendants renamed the building again to Axel Brewers Hill.

17. The building was covered by a rental license that was effective from August 4, 2022 through October 30, 2023. Starting November 1, 2023 and to date, the property has not been licensed as a rental dwelling.

## The Baltimore City Code

18. In 2018, through City Council Bill 18-0185, the Baltimore City Code was amended to extend existing rental licensing requirements for multi-unit buildings to one-unit and two-unit rental properties. Multi-dwellings, like the subject building, were already required to be licensed.

19. The amendment changed the inspection regime to require landlords to hire private home inspectors to conduct the inspections required to obtain a rental license in compliance with the City's health and safety standards.

20. The purpose of the amendments was public health and safety.

21. Under the Baltimore City rental regulation regime, property owners must be registered.

22. Under the Baltimore City rental regulation regime, rental properties must be licensed.

23. Section 5-4(a) provides that no person may:

> (1) rent or offer to rent to another all or any part of any rental dwelling without a currently effective license to do so from the Housing Commissioner; or
>
> (2) charge, accept, retain, or seek to collect any rental payment or other compensation for providing to another the occupancy of all or any part of any rental dwelling unless the person was licensed under this subtitle at both the time of offering to provide and the time of providing this occupancy.

24. Under § 5-26, violation of § 5-4 is a misdemeanor subject to a $1,000 fine.

25. The City does not issue a license for each unit, but rather the building as a whole is licensed.

26. From August 2022 through October 2023, after Defendants purchased and began managing the property, a single license covered all 372 units in the building.

4863-5304-3179, v. 1

27. According to the Baltimore City Department of Housing and Community Development, the regulator of Baltimore of landlords and issuer of rental licenses, the property is not currently licensed.

28. The Baltimore City DCHD indicates that the last date the property was licensed was October 30, 2023.

29. Defendants had actual knowledge that the property was not licensed.

30. Defendants had actual knowledge that they were not allowed to charge, collect, or retain rent attributable to an unlicensed period.

31. A landlord may not engage in debt collection activities or pursue claims against a tenant who has failed to pay rent attributable to a period during which the landlord was unlicensed.

32. Defendants had actual knowledge that the right to collect the rent did not exist.

33. Defendants have repeatedly claimed and attempted to enforce a right with knowledge that it does not exist.

34. Rent paid in response to such efforts constitutes damages under Maryland law.

## Plaintiff's Occupancy

35. Plaintiff first rented a unit in the building in 2021.

36. In 2022, Plaintiff moved into her current unit on the 8th floor of the building. Plaintiff's unit overlooks the swimming pool, which has since collapsed.

37. In April 2024, Plaintiff renewed her lease at a time when the property was unlicensed.

38. It was a deceptive trade practice by Defendants to induce Plaintiff to enter a new lease at a time when they knew the property was unlicensed.

4863-5304-3179, v. 1

## Problems with the Building

39. Throughout the unlicensed period, the property has had and continues to have health and safety issues.

40. The building has four elevators for resident use. One or more of the elevators were frequently inoperable.

41. The trash chutes, which have electronic doors, were also frequently inoperable.

42. There were frequent incidents of dogs attacking residents and other animals, and dogs defecating and urinating in the common areas of the building. Building management failed to adequately and timely address these problems.

43. Structurally, the building has cracks in walls where insects come in the building, and water leaking into common areas.

44. As a result of Defendants' inadequate management, non-residents can easily gain access to building. The lack of security has resulted in packages being regularly stolen from the mailroom, as well as on at least one occasion a non-resident of the building being found sleeping on the couch in the lobby.

45. The garage doors are frequently inoperable, and there have been numerous reported car thefts out of the garage. There is an additional fee, as part of the rent, for parking in the garage. Plaintiff asked building management for an abatement of the portion of the rent Plaintiff paid for parking in the garage based on the frequent issues with the garage doors, but building management denied the request.

46. The pool, located on an outdoor terrace, is a focal point of Defendants' marketing of the building, and a major justification for the rental amounts charged by Defendants. For instance, units overlooking the pool cost more per month than other similar sized units.

4863-5304-3179, v. 1

47. Defendants never drained the pool and left the nearby decorative fountain running all year long. The pool has been leaking for a long period of time, resulting in water pouring out directly outside the property manager's office window. Building maintenance personnel had to regularly salt the sidewalk in the colder months because the leaking pool created a sheet of ice.

48. On September 20, 2024, the pool collapsed, causing the building to be evacuated on an emergency basis.

49. Plaintiff incurred extra living expenses after the collapse of the pool made it unsafe to live in the building.

50. Upon information an belief, Plaintiff and other residents were overcharged for common area water and sewer usage because of Defendants' mismanagement of the pool and fountain.

**Defendants' Debt Collection Efforts**

51. At the end of each month, Defendants send all residents an email stating that the rent is due by the 1st of the upcoming month.

52. Plaintiff's lease states that the due date of the rent is the 10th of the month, after which late fees will be assessed.

53. The monthly emails contain a link to pay the rent via the Defendants' online portal.

54. Plaintiff's lease requires that the rent be paid at Defendants' online payment site.

55. The Defendants' portal allows users to save bank account information, and makes other methods of paying rent available.

56. Each month during the unlicensed period, Plaintiff received such an email, followed the link in the email to the portal, and used her saved banking information to pay rent, utilities, taxes, parking fees, and other "rent" as defined under Maryland law in response to the Defendants' collection efforts.

57. On several occasions, Defendants sent separate reminders and requests for payment of certain fees that were not calculated as part of the monthly rent payment. Each of these emails was also a debt collection effort that caused Plaintiff and other class members to pay in response.

## CLASS ACTION ALLEGATIONS

58. Plaintiff brings this action of behalf of a Class of all tenants of the building who were legally responsible for payment of rent under a lease during the unlicensed period of November 1, 2023 through the present.

59. There are common issues as to whether the Defendants' actions and inactions were in violation of state law when they leased dwellings and collected rent without a rental license.

60. The Class is identifiable based on Defendants' records.

61. Because the building has 372 units, some with multiple lessees, the Class is so numerous that joinder of all members is impracticable.

62. There are questions of law and fact that are common to the Class and predominate over any questions that may affect individual class members differently. These common and predominating questions include:

    A. whether the property was properly licensed during the class period,

    B. whether Defendants engaged in efforts to collect rent attributable to periods when the building was not licensed and whether those debt collection efforts caused payment of rent in response,

    C. whether Defendants claimed, attempted, or threatened to enforce a right with knowledge that the right does not exist,

    D. whether Defendants engaged in unfair, deceptive or abusive trade practices under the MCPA,

    E.  whether all leases for units in the building are void or voidable as a consequence of Defendants' deceptive practices,

    F.  whether a declaratory judgment and an injunction are proper to prevent the Defendants from claiming that rent is still owed to them by the Class members for the period of time where a property was unlicensed,

    G.  whether named Plaintiff and the Class members may recover damages.

63. Plaintiff's claims are typical of the claims of the class under Rule 23(a)(3) and are based on and arise out of similar facts constituting Defendants' wrongful conduct. Plaintiff paid rent in response to collection efforts for months when Defendants' property was unlicensed and Defendants did not have the right to collect that rent. Plaintiff also suffered actual damages as a result of the defects in the building's common areas.

64. Plaintiff will fairly and adequately represent the class and protect the interests of the Class under Fed. R. Civ. P. 23(a)(4), and has no interests that are antagonistic to any member of the Class.

65. Plaintiff's counsel is experienced in class action litigation.

66. Plaintiff and Plaintiff's counsel will vigorously prosecute this action.

67. The prosecution of separate actions by individual members of the Class would create a risk of establishing incompatible standards of conduct for Defendants within the meaning of Fed. R. Civ. P. 23(b)(1)(A).

68. The Defendants' actions are generally applicable to the Class as a whole, and Plaintiff seeks injunctive and declaratory remedies with respect to the Class as a whole within the meaning of Fed. R. Civ. P. 23(b)(2).

69. Common questions of law and fact enumerated above predominate over questions affecting only individual members of the Class and a class action is the superior method for fair and efficient adjudication of the controversy within the meaning of Fed. R. Civ. P. 23(b)(3).

70. The likelihood that individual members of the Class will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation.

## COUNT I — VIOLATION OF MCDCA

71. Plaintiff incorporates the allegations of each of the preceding numbered paragraphs of this Complaint as if restated fully in this paragraph.

72. Defendants are "collectors" under the Maryland Consumer Debt Collection Act, Md. Code, Com. Law § 14-201(b).

73. A residential rental lease is a "consumer transaction." Md. Code, Com. Law § 14-201(c).

74. "In collecting or attempting to collect an alleged debt a collector may not: Claim, attempt, or threaten to enforce a right with knowledge that the right does not exist." Md. Code, Com. Law § 14-202(8).

75. A collector also may not "[e]ngage in any conduct that violates §§ 804 through 812 of the federal Fair Debt Collection Practices Act." Md. Code, Com. Law § 14-202(11). The FDCPA prohibits, among other things, the collection of any debt that is not permitted by law or contract, 15 U.S.C. § 1692f(1). Conduct that would violate the FDCPA gives rise to a MCDCA violation, regardless of whether the violator is itself covered by the FDCPA.

76. A collector is liable for any damages proximately caused by a MCDCA violation, including damages for emotional distress or mental anguish suffered with or without accompanying physical injury. Md. Code, Com. Law § 14-203.

77. Defendants knew their property was required to be licensed.

78. The property is not currently licensed and has not been licensed since October 30, 2024.

79. Defendants knew the property was not properly licensed.

80. Defendants knowingly attempted to enforce a right that does not exist at least monthly for the entirety of the unlicensed period.

81. Rent was paid in response to those efforts, which constitutes actual damages proximately caused by the violation.

## COUNT II — VIOLATION OF MCPA

82. Plaintiff incorporates the allegations of each of the preceding numbered paragraphs of this Complaint as if restated fully in this paragraph.

83. The Maryland Consumer Protection Act prohibits "any unfair, abusive or deceptive trade practice" in "[t]he offer for sale, lease, rental, loan, or bailment of consumer goods, consumer realty, or consumer services" Md. Code, Com. Law § 13-303(2).

84. "Unfair, abusive or deceptive trade practices include … False, falsely disparaging, or misleading oral or written statement, visual description, or other representation of any kind which has the capacity, tendency, or effect of deceiving or misleading consumers; [and] Failure to state a material fact if the failure deceives or tends to deceive." Md. Code, Com. Law §§ 13-301(1), (3).

85. "Unfair, abusive or deceptive trade practices" also include any violation of the MCDCA. Md. Code, Com. Law § 13-301(14)(iii).

86. Defendants engaged in deceptive trade practices to induce Plaintiff to enter a lease when the property was not properly licensed and to pay rent attributable to unlicensed periods in response to debt collection efforts.

4863-5304-3179, v. 1

87. Plaintiff suffered actual damages, including paying rent attributable to unlicensed periods in response to debt collection efforts, diminution in the value of her lease because of the poor condition of the property's common areas, and additional living expenses incurred as a result of evacuating the property, emotional damages, and sleeplessness.

### COUNT III — DECLARATORY JUDGMENT

88. Plaintiff incorporates the allegations of each of the preceding numbered paragraphs of this Complaint as if restated fully in this paragraph

89. An actual controversy exists between Plaintiff and the Class on one hand, and Defendants on the other hand.

90. Plaintiff and the Class assert that Defendants are not permitted to collect rent attributable to the unlicensed period, or to apply rental payments made if the property ever becomes licensed again to rent obligations attributable to the unlicensed period.

91. A declaratory judgment that Plaintiff and the Class do not owe any rent for the unlicensed period, however long the unlicensed period lasts, and that if the property ever becomes licensed again, Defendants must apply future rent payments only to licensed periods will resolve the actual controversy and imminent litigation over these issues.

92. Because rent attributable to the unlicensed period is not owed, Defendants may not purport to be a creditor, may not report non-payment of rent attributable to the unlicensed period to any credit reporting agency, may not file failure to pay rent actions or take steps to evict tenants, and may not purport to sell any debt based on non-payment of rent attributable to an unlicensed period because the right to collect that rent does not exist.

93. Plaintiff and the Class also assert that their leases, entered into when the building was not licensed, were the product of deceptive practices, are invalid, void or voidable, and are terminable by the tenants, and that tenants can move out of this unsafe building and secure

alternative living arrangements without paying money to Defendants that is not owed and without fear of the potential adverse consequences of Defendants attempting to enforce, or report to credit bureaus regarding, rights that do not exist.

94. A declaratory judgment that establishes that all leases entered into while the property was not properly licensed are void or voidable will resolve the actual controversies regarding tenants' right to be free of purported lease obligations that were the product of deceptive trade practices.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff and the Class respectfully request that this Court:

A. Issue an order determining that this action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, that Plaintiff is a proper class representative, that Plaintiff's attorneys shall be appointed as Class counsel pursuant to Rule 23(g) of the Federal Rules of Civil Procedure, and that Class notice be promptly issued;

B. Certify this action is a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

C. Appoint Plaintiff to represent the Class;

D. Appoint undersigned counsel to represent the Class;

E. Enter Judgment in favor of Plaintiff and the members of the Class against Defendants awarding damages, including punitive damages, statutory damages, and/or nominal damages, to Plaintiff and the Class members, in an amount, exceeding $75,000.00, exclusive of interest and costs, and according to proof at trial including interest thereon;

F. Enter Declaratory Judgment in favor of Plaintiff and the members of the Class against Defendants pursuant to 28 U.S.C. § 2201, declaring that Defendants' conduct is unlawful as alleged herein and that monies collected by Defendants representing rents purportedly due

during the unlicensed period are damages that must be reimbursed to Plaintiff and the Class members;

G. Permanently restrain Defendants, and their members, officers, agents, servants, employees and attorneys, from engaging in efforts to collect debts from Class members for which the right does not exist as alleged herein and from enforcing void leases;

H. Award Plaintiff and the Class members their reasonable costs and expenses incurred in this action, including attorneys' fees and expert fees; and

I. Grant Plaintiff and the Class members further equitable, injunctive, declaratory, or other relief as the Court deems appropriate.

Dated: October 1, 2024

Respectfully submitted,

*/s/ David J. Shuster*
David J. Shuster (Fed. Bar No. 23120)
Justin A. Redd (Fed. Bar No. 18614)
Emily R. Greene (Fed. Bar No. 20302)
KRAMON & GRAHAM, P.A.
750 E. Pratt Street, Suite 1100
Baltimore, Maryland  21202
(410)  752-6030 (telephone)
(410)  539-1269 (facsimile)
dshuster@kg-law.com
jredd@kg-law.com
egreene@kg-law.com

*Attorneys for Plaintiff*
*Stephanie Agee and the Class*

## JURY DEMAND

Plaintiff demands a jury trial on all issues so triable.

*/s/ David J. Shuster*
David J. Shuster

4863-5304-3179, v. 1